1

2

3

4

5

6

7

8

9

10

# UNITED STATES DISTRICT COURT

11

### EASTERN DISTRICT OF CALIFORNIA

12

| | |
|---|---|
| JOHNNY L. WARD, ) | 1:04-CV-06222 OWW NEW (DLB) HC |
| ) | |
| Petitioner, ) | |
| ) | FINDINGS AND RECOMMENDATION |
| v. ) | REGARDING PETITION FOR WRIT OF |
| ) | HABEAS CORPUS |
| ) | |
| RICHARD KIRKLAND, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

13

14

15

16

17

18

19    Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

20  pursuant to 28 U.S.C. § 2254.

21                                               **BACKGROUND**

22    Petitioner is currently in the custody of the California Department of Corrections pursuant to

23  a judgment of the Superior Court of California, County of Merced, following his conviction by jury

24  trial on May 3, 2001, of possession of a firearm by a felon (Cal. Penal Code § 12021(a)(1)),

25  possession of ammunition by a prohibited person (Cal. Penal Code § 12316(b)(1)), and possession of

26  cocaine base (Cal. Health and Safety Code § 11350). See Lodged Doc. No. 1.[1] In addition,

27

28
_____
    [1]"Lodged Doc." refers to the documents lodged by Respondent on April 14, 2005.

1    allegations that Petitioner possessed cocaine base while armed with a firearm (Cal. Health and Safety

2    Code § 11370.1(a)) and that Petitioner had suffered two prior serious felonies (Cal. Penal Code

3    § 1170.12(c)(2)(A)) were found to be true. Id. On July 10, 2001, Petitioner was sentenced to serve a

4    total indeterminate term of seventy-eight years to life in state prison. Id.

5         Petitioner appealed his conviction to the California Court of Appeals, Fifth Appellate District

6    (hereinafter "Fifth DCA"). On November 21, 2002, the Fifth DCA ordered the sentence stayed as to

7    Count Two and remanded the case to the sentencing court to prepare an amended abstract of

8    judgment. See Lodged Doc. No. 4. In all other respects, the judgment was affirmed. Id. On remand,

9    the sentencing court amended the abstract of judgment to correctly reflect the amended sentence of

10   fifty years to life. See Lodged Doc. No. 5. Petitioner then filed a petition for review in the California

11   Supreme Court on January 2, 2003. See Lodged Doc. No. 6. The petition was summarily denied on

12   February 11, 2003. Id.

13        On August 18, 2003, Petitioner filed a petition for writ of habeas corpus in the California

14   Supreme Court. See Lodged Doc. No. 7. On April 14, 2004, the petition was summarily denied on

15   procedural grounds with citation to In re Dixon, 41 Cal.2d 756 (1953), In re Swain, 34 Cal.2d 300,

16   304 (1949), People v. Duvall, 9 Cal.4th 464, 474 (1995), and In re Lindley, 29 Cal. 2d 709 (1947).

17        On September 9, 2004, the Court received a federal habeas petition which Petitioner had filed

18   in the United States District Court for the Northern District of California. On October 12, 2004,

19   Petitioner filed a motion to amend the petition and an amended petition naming a proper respondent.

20   The Court granted Petitioner's motion on October 20, 2004. On the same date, the Court issued an

21   order dismissing the amended petition with leave to file a second amended petition, because the first

22   amended petition did not state cognizable claims for relief. On November 22, 2004, Petitioner filed

23   the instant second amended petition for writ of habeas corpus. Petitioner presented four claims for

24   relief. However after a review of the petition, on December 1, 2004, the Court issued a Findings and

25   Recommendation which recommended Grounds Three and Four be dismissed for failure to state

26   cognizable claims. The District Court adopted the Findings and Recommendation in full and

27   dismissed Grounds Three and Four on January 18, 2005. Respondent filed an answer to the second

28   amended petition on April 14, 2005. Petitioner did not file a traverse.

1

**FACTUAL BACKGROUND**[2]

2      Shortly after midnight on October 14, 2000, at the Trail's End bar in Merced, California, a

3  patron told the doorman and bouncer, Billy Magar, that a man had been "flashing" a gun to others.

4  Magar told the owner to call the police, which she did. Merced Police Officers Richard Howard and

5  Don King responded to the call, and were informed that the man with the gun was wearing a

6  Pendleton shirt and a fishing hat. The officers found Petitioner's sister, Collette Presley, standing in

7  the doorway to the men's room yelling at someone inside the restroom. After Officer Howard moved

8  Presley out of the way, he found Petitioner and Lamel Winzer inside the restroom. They appeared to

9  be arguing. Petitioner was wearing a Pendleton shirt and a fishing hat.

10     Officer Howard told Petitioner he was investigating a report that someone had a gun.

11 Petitioner told Howard that he had something and asked Howard to let him "get rid of it." Officer

12 Howard found a .32-caliber semi-automatic handgun loaded with a nine-round clip tucked in the

13 waistband of Petitioner's pants. He also found six foil-wrapped rocks of cocaine inside a pack of

14 Basic brand cigarettes in Petitioner's shirt pocket. Officer Howard opined that the amount and

15 separate packaging of the cocaine indicated it was possessed for the purpose of sale.

16     Officer Howard further testified that Petitioner volunteered an explanation of why he

17 possessed the gun. He told Howard that he had argued with two men. Petitioner fished the gun out of

18 the restroom's trash can after one of the men threw it there.

19     **Defense Evidence**

20     Petitioner and Presley testified regarding the events leading up to the charged incident.

21 Petitioner met up with his sister, his girlfriend, and another female friend. Presley bought two packs

22 of Newport brand cigarettes for herself and Petitioner. Petitioner testified he only smokes Newport

23 cigarettes, except when incarcerated. The group also had a few drinks before arriving at the Trail's

24 End bar.

25     Presley testified that she had a gun in her purse because she had been harassed by a stalker in

26

27

28 _____

[2]The factual summary of the case is derived from the unpublished opinion of the Fifth DCA of November 21, 2002. See Lodged Doc. No. 4.

1  the previous months and she feared for her life. She encountered Winzer outside the bar and ended

2  up in a heated confrontation with him regarding an altercation Winzer had with Presley's husband

3  several years ago. Presley held her gun at her side during the argument because she was fearful that

4  Winzer might hit her.

5          Someone in the bar told Petitioner that his sister was behaving foolishly outside the bar. He

6  went to investigate and found Presley with a gun in her hand, arguing with Winzer. He put the gun in

7  his waistband and took it to the bathroom to unload and get rid of it. Winzer did not see the gun.

8  Winzer walked to the bathroom with Petitioner, talking casually.

9          Petitioner and Winzer then heard Presley approaching the bathroom, yelling at Winzer.

10  Petitioner entered the restroom first, attempting to conceal the gun from Winzer. The clip was stuck

11  inside the weapon, so Petitioner put the gun back in his waistband. The police then arrived, searched

12  Petitioner, and found the gun. Petitioner did not know where the pack of Basic cigarettes came from.

13  He had left his pack of Newport cigarettes at the bar. Petitioner denied having told Officer Howard

14  that he retrieved the gun from a trash can.

15                                              **DISCUSSION**

16  **I. Jurisdiction**

17          Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant

18  to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of

19  the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362,

20  375 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S.

21  Constitution.  In addition, the conviction challenged arises out of the Merced County Superior Court,

22  which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 2241(d).  Accordingly,

23  the Court has jurisdiction over the action.

24          On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

25  1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

26  <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); <u>Jeffries v. Wood</u>, 114

27  F.3d 1484, 1499 (9th Cir. 1997), *quoting* <u>Drinkard v. Johnson</u>, 97 F.3d 751, 769 (5th Cir.1996), *cert.*

28  *denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)

1  (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was

2  filed after the enactment of the AEDPA; thus, it is governed by its provisions.

3  **II.  Legal Standard of Review**

4      This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody

5  pursuant to the judgment of a State court only on the ground that he is in custody in violation of the

6  Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

7      The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death

8  Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade,  538 U.S. 63, 70

9  (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the

10  adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable

11  application of, clearly established Federal law, as determined by the Supreme Court of the United

12  States" or "resulted in a decision that was based on an unreasonable determination of the facts in

13  light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer,

14  538 U.S. at 70-71; see Williams, 529 U.S. at 413.

15      As a threshold matter, this Court must "first decide what constitutes 'clearly established

16  Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,

17  quoting 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court

18  must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time

19  of the relevant state-court decision." Id., quoting Williams, 592 U.S. at 412. "In other words, 'clearly

20  established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by

21  the Supreme Court at the time the state court renders its decision." Id.

22      Finally, this Court must consider whether the state court's decision was "contrary to, or

23  involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72,

24  quoting 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the

25  writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

26  question of law or if the state court decides a case differently than [the] Court has on a set of

27  materially indistinguishable facts."  Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72.

28  "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state

1    court identifies the correct governing legal principle from [the] Court's decisions but unreasonably

2    applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 413.

3         "[A] federal court may not issue the writ simply because the court concludes in its

4    independent judgment that the relevant state court decision applied clearly established federal law

5    erroneously or incorrectly.  Rather, that application must also be unreasonable." <u>Id</u>. at 411.  A

6    federal habeas court making the "unreasonable application" inquiry should ask whether the state

7    court's application of clearly established federal law was "objectively unreasonable."  <u>Id</u>. at 409.

8         Petitioner has the burden of establishing that the decision of the state court is contrary to or

9    involved an unreasonable application of United States Supreme Court precedent. <u>Baylor v. Estelle</u>,

10   94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states,

11   Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court

12   decision is objectively unreasonable.  <u>See</u> <u>Duhaime v. Ducharme</u>, 200 F.3d 597, 600-01 (9th

13   Cir.1999).

14        AEDPA requires that we give considerable deference to state court decisions. The state

15   court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's

16   interpretation of its own laws. <u>Souch v. Schaivo</u>, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537

17   U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

18   **III.  Review of Petitioner's Claims[3]**

19        **A.  Ground One**

20        At trial, Petitioner produced evidence that he took the gun from Presley and possessed it only

21   because he feared Presley would shoot Winzer. Petitioner testified he went directly to the men's

22   room to dispose of the gun but was interrupted by the police officers. In his first claim for relief,

23   Petitioner argues the trial court erred in failing to *sua sponte* instruct the jury on the defense of

24   necessity.

25        Generally, issues of state law are not cognizable on federal habeas. <u>Estelle v. McGuire</u>, 502

26   U.S. 62, 67, (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for

27

28
_____

[3]The Court notes that Grounds Three and Four were dismissed by the District Court on January 18, 2005.

1   errors of state law.' "), *quoting* Lewis v. Jeffers, 497 U.S. 764, 780 (1990). In reviewing jury

2   instruction on federal habeas, the issue is "whether the ailing instruction by itself so infected the

3   entire trial that the resulting conviction violates due process." Estelle, 502 U.S. at 67, *quoting* Cupp

4   v. Naughten, 414 U.S. 141, 147 (1973). The burden on the habeas petitioner is "especially heavy"

5   where, as here, the alleged error involves the failure to give an instruction. Hendricks v. Vasquez,

6   974 F.2d 1099, 1106 (9th Cir.1992) (as amended), *quoting* Henderson v. Kibbe, 431 U.S. 145, 155

7   (1977); Reynolds v. Maddock, 1999 WL 354366, *3 (N.D. Cal. 1999).

8        The Supreme Court has held due process mandates that criminal prosecutions comport with

9   prevailing notions of fundamental fairness. California v. Trombetta, 467 U.S. 479, 485 (1984).

10  Implicit in this standard of fairness is the requirement that "criminal defendants be afforded a

11  meaningful opportunity to present a complete defense." Id. When habeas relief is sought under 28

12  U.S.C. § 2254, "[f]ailure to instruct on the defense theory of the case is reversible error if the theory

13  is legally sound and evidence in the case makes it applicable." Beardslee v. Woodford, 358 F.3d 560,

14  577 (9th Cir.2004) (as amended); see also Bradley v. Duncan, 315 F.3d 1091, 1098 (9th Cir.2002)

15  ("[T]he right to present a defense would be empty if it did not entail the further right to an instruction

16  that allowed the jury to consider the defense.") (internal quotation marks omitted); Conde v. Henry,

17  198 F.3d 734, 739 (9th Cir.2000) (as amended) ("It is well established that a criminal defendant is

18  entitled to adequate instructions on the defense theory of the case."). A habeas petitioner must show

19  that the alleged instructional error "had substantial and injurious effect or influence in determining

20  the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (citation omitted); see also

21  Beardslee, 358 F.3d at 578.

22       This claim was first presented on direct appeal to the Fifth DCA.  The Fifth DCA denied the

23  claim in a reasoned opinion. See Lodged Doc. No. 4. Petitioner then raised the claim in a petition for

24  review before the California Supreme Court, and the petition was summarily denied. See Lodged

25  Doc. No. 6.  The California Supreme Court, by its "silent order" denying review of the Fifth DCA's

26  decision, is presumed to have denied the claims presented for the same reasons stated in the opinion

27  of the 5th DCA.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

28       In rejecting this claim, the Fifth DCA found the facts presented to the jury did not support a

1   necessity claim because Petitioner did not establish that he had no reasonable legal alternative to

2   taking the gun from his sister and keeping it himself. Under California law, a defense of necessity

3   requires that the defendant show:

4       1) the defendant committed the criminal act to prevent a significant and imminent harm to
        another; 2) there was no reasonable legal alternative to his act; 3) harm from the illegal act
5       was not disproportionate to the harm to be avoided; 4) his act was in good faith; and (5)
        objectively reasonable; and (6) he did not substantially contribute to the creation of the
6       emergency.

7   See Lodged Doc. No. 4.

8       The appellate court stated:

9           While the defense did present evidence that [Petitioner] took the gun from Presley to
        prevent her from shooting Winzer, no evidence was presented that [Petitioner] had no
10      reasonable, legal alternative to taking and keeping the gun. [Petitioner] asserts that "there was
        no evidence that [anyone] else present at the altercation would have been a more responsible
11      person to whom to give the weapon." This assertion was soundly contradicted by evidence
        that the owner as well as a bouncer were present. Magar, appropriately responded to news
12      that someone was showing a gun to other patrons by asking the bar owner to call the police.
        The bar owner also responded to this dangerous situation by calling the police. Thus, there
13      were at least two individuals to whom [Petitioner] may have turned for assistance with a
        dangerous situation.
14
            Even if the evidence did show that the need to remove the gun from Presley was too
15      immediate to wait for help to be summoned, [Petitioner's] continued possession of the gun
        after he took it from Presley constituted a violation of the statute. Because [Petitioner's]
16      evidence, even if believed by the jury, was insufficient as a matter of law to establish the
        elements of the defense of necessity, the instruction was unnecessary. [Citations omitted.]
17
    See Lodged Doc. No. 4.
18
19      As found by the appellate court, Petitioner has not shown error on the part of the trial court in

20  failing to instruct the jury on the necessity defense. Petitioner failed to present evidence that there

21  were no reasonable alternatives to his acts of taking the gun, concealing it on his person, retaining

22  possession of it until police arrived, and then relinquishing it only after the police forcibly seized it

23  from him. (RT[4] 47, 192-193.)

24      The state court rejection of this claim was not unreasonable. It should be denied.

25  **B.  Ground Two**

26      Petitioner next argues defense counsel was ineffective in failing to request instructions on the

27  defense of necessity.

28

        [4]"RT" refers to the Reporter's Transcript lodged by Respondent with the Court.

1    The law governing ineffective assistance of counsel claims is clearly established for the

2  purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  Canales v. Roe, 151

3  F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging ineffective assistance

4  of counsel, the court must consider two factors.  Strickland v. Washington, 466 U.S. 668, 687, 104

5  S.Ct. 2052, 2064 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must

6  show that counsel's performance was deficient, requiring a showing that counsel made errors so

7  serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.

8  Strickland, 466 U.S. at 687.  The petitioner must show that counsel's representation fell below an

9  objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were

10  not the result of reasonable professional judgment considering the circumstances.  Id. at 688; United

11  States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).  Judicial scrutiny of counsel's

12  performance is highly deferential.  A court indulges a strong presumption that counsel's conduct falls

13  within the wide range of reasonable professional assistance.  Strickland, 466 U.S. 668, 687, 104

14  S.Ct. 2052, 2064 (1984); Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

15    Second, the petitioner must demonstrate that "there is a reasonable probability that, but for

16  counsel's unprofessional errors, the result ... would have been different," 466 U.S., at 694. Petitioner

17  must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose

18  result is reliable.  Strickland, 466 U.S. at 688.  The court must evaluate whether the entire trial was

19  fundamentally unfair or unreliable because of counsel's ineffectiveness.  Id.; Quintero-Barraza, 78

20  F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994).

21    A court need not determine whether counsel's performance was deficient before examining

22  the prejudice suffered by the petitioner as a result of the alleged deficiencies.  Strickland, 466 U.S.

23  668, 697, 104 S.Ct. 2052, 2074 (1984).  Since the defendant must affirmatively prove prejudice, any

24  deficiency that does not result in prejudice must necessarily fail. However, there are certain instances

25  which are legally presumed to result in prejudice, e.g., where there has been an actual or constructive

26  denial of the assistance of counsel or where the State has interfered with counsel's assistance.  See

27  Strickland, 466 U.S. at 692; United States v. Cronic, 466 U.S., at 659, and n. 25, 104 S.Ct., at

28  2046-2047, and n. 25 (1984).  Ineffective assistance of counsel claims are analyzed under the

1  "unreasonable application" prong of <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).  <u>Weighall v. Middle</u>,

2  215 F.3d 1058, 1062 (2000).

3      This claim was also presented on direct appeal and rejected by the Fifth DCA. It was also

4  presented in the petition for review to the California Supreme Court where it was summarily denied.

5      In rejecting this claim, the appellate court applied the <u>Strickland</u> standard discussed above.

6  The court found counsel did not perform deficiently, and in any case, Petitioner suffered no prejudice

7  resulting from the alleged error of omission. For the same reasons discussed above, this claim should

8  also be rejected. Petitioner did not produce sufficient evidence to merit an instruction on the defense

9  of necessity; thus, counsel cannot be faulted for his failure to request the instruction. And because

10  the evidence was legally insufficient, Petitioner cannot demonstrate prejudice.

11      As with the first claim, the denial of this claim was not contrary to or an unreasonable

12  application of controlling Supreme Court authority, and it too should be denied.

13                            **RECOMMENDATION**

14      Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be

15  DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for

16  Respondent.

17      This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United

18  States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304

19  of the Local Rules of Practice for the United States District Court, Eastern District of California.

20  Within thirty (30) days after being served with a copy, any party may file written objections with the

21  court and serve a copy on all parties.  Such a document should be captioned "Objections to

22  Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and

23  filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections.

24  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  The

25  parties are advised that failure to file objections within the specified time may waive the right to

26  appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

27

28      IT IS SO ORDERED.

1

Dated:   October 24, 2007                    /s/ Gary S. Austin
                                      UNITED STATES MAGISTRATE JUDGE

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28